Laura Fleming, Bar No. 219287
E-mail: lf@paynefears.com
Robert T. Matsuishi, Bar No. 259182
Email: rtm@paynefears.com
Blake A. Dillion, Bar No. 305838
Email: bad@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendant
ABM INDUSTRY GROUPS, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE MABE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ABM INDUSTRY GROUPS, LLC, a California business entity and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No. 2:22-cv-00475<br><br>[Removed from San Diego County Superior Court, Case No. 37-2021-00052763-CU-WT-CTL]<br><br>**PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331, 1332 AND 1441**<br><br>[Supporting Declarations Filed Concurrently Under Separate Cover]<br><br>Trial Date:　　　None Set |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF, AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant ABM Industry Groups LLC hereby removes this action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California, on the following grounds:

## I.     INTRODUCTION

1. This Court has jurisdiction over this action because the Complaint by Plaintiff Steve Mabe ("Plaintiff") alleges violations of federal law, and includes causes of action arising under federal law – specifically, the Family Medical Leave Act (the "FMLA"). (*See* Compl. at ¶¶ 38-55, attached as Exhibit B to the Declaration of Blake A. Dillion ("Dillion Decl.").)

2. This Court also has jurisdiction over this action because complete diversity exists between Plaintiff and Defendant ABM Industry Groups, LLC ("ABM" or "Defendant").

3. Plaintiff is a citizen of the State of California, and was a citizen at the time of the filing of his Complaint.

4. Defendant is now, and was at the time this action was commenced, a citizen of the States of Delaware and Texas within the meaning of 28 U.S.C. section 1332.

5. Plaintiff's Complaint, on its face and based on the evidence presented herein, contemplates a matter in controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Pursuant to 28 U.S.C. section 1446(b), this case is being removed within thirty (30) days of Defendant receipt of a document (the "Complaint") where diversity of citizenship is apparent.

7. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff's complaint alleges violations of federal law and under 28 U.S.C. § 1332 because this is a civil action between citizens of different states, and the matter in controversy exceeds $75,000.

8. Accordingly, Defendant respectfully requests that this Court exercise its removal jurisdiction over this action.

## II. PLAINTIFF'S STATE COURT ACTION

9. On or about December 17, 2021, Plaintiff filed an action against Defendant titled "*Steve Mabe, Plaintiff vs. ABM Industry Groups, LLC, a California business entity and DOES 1 through 100, inclusive,*" in the Superior Court of the State of California, County of San Diego, Case No. 37-2021-00052763-CU-WT-CTL (the "State Court Action").

10. Thereafter Plaintiff served the Complaint on ABM through its registered agent for service of process on December 22, 2021. A true and correct copy of the Summons and Complaint (as well as other accompanying court documents) served on ABM in the State Court Action through its registered agent is attached to the Dillion Decl. at ¶¶ 2-3, Exhs. A & B.

11. In his Complaint, Plaintiff alleges the following causes of action: (1) disability discrimination-wrongful termination; (2) discriminatory failure to engage in good faith interactive process; (3) discriminatory failure to accommodate; (4) failure to take steps reasonably necessary to prevent harassment and discrimination; (5) interference in violation of FMLA; (6) retaliation in violation of FMLA; (7) interference in violation of CFRA; (8) retaliation in violation of CFRA; (9) violation of public policy; and (10) age discrimination. (*Id.*)

12. On January 21, 2022, Defendant ABM filed an Answer to Plaintiff's Complaint in the State Court Action. A true and correct copy of Defendant ABM's Answer to Plaintiff's Complaint is attached to the Dillion Decl. at ¶ 4, Exh. C.

13. The Summons and Complaint, Proof of Service, and the Answer, are the pleadings, process, and orders filed and served upon or by Defendant ABM in the State Court Action.

## III. THIS COURT HAS JURISDICTION OVER THE ENTIRETY OF PLAINTIFF'S COMPLAINT

### A. This Court Has Federal Question Jurisdiction Under The Family Medical Leave Act, 29 U.S.C. § 2601, Et Seq.

14. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Any such action may be removed to the district court if it is originally filed in a state court:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

15. Here, Plaintiff's Complaint alleges violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Specifically, Plaintiff alleges:

> MABE was eligible for medical leave under the FMLA.
> MABE requested and took medical leave.
> ABM discriminated against and terminated MABE for taking FMLA leave.

(Compl. at ¶¶ 49-51.)

16. This Court has federal question jurisdiction because Plaintiff's Complaint expressly and explicitly includes claims for alleged violations of the FMLA.

**B. Removal of the Entire Action is Proper Pursuant to 28 U.S.C. § 1367(a)**

17. This Court has supplemental jurisdiction over all claims that are so related to the federal claims discussed above because they "form part of the same case or controversy." 28 U.S.C. § 1367(a). Supplemental jurisdiction is proper if the causes of action in question "derive from a common nucleus of operative fact," such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

18. In this case, although some of Plaintiff's claims may not directly raise federal questions, **all** of Plaintiff's claims arise directly out of the same "common nucleus of operative facts," because they all relate to Plaintiff's employment with Defendant from March 2019 through his allegedly wrongful termination in June 2021. (*See* Compl. at ¶¶ 6-86.) Thus, Plaintiff's claims would normally be tried in a single judicial proceeding. The entire action is therefore removable under this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

**C. This Court May Exercise Diversity Jurisdiction Over the State Law Claims**

19. However, should the Court be inclined not to extend its supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a), removal of the entire action is independently founded upon 28 U.S.C. § 1332.

20. The Complaint, and each alleged cause of action contained therein, may be properly removed on the basis of diversity jurisdiction in that this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

### 1. Complete Diversity Exists for Removal

#### (a) Plaintiff is a Citizen of the State of California

21. Plaintiff is now, and was at the time this action was commenced, a citizen of the State of California within the meaning of U.S.C. § 1332(a); he resided in Riverside County, California, State of California. (Compl. at ¶ 1); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is his permanent home, where he resides with the intention to remain or to which he intends to return."); *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (explaining that residency creates a rebuttable presumption of domicile for purposes of establishing diversity of citizenship).

22. While "[r]esidence alone is not the equivalent of citizenship … the place of residence is *prima facie* the domicile." *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *see also Hester v. Horowitz,* No. 14-00413 JMS-KLP, 2015 WL 127890, at *2 (D. Haw. Jan. 8, 2015) ("Although residence alone is not the equivalent of citizenship, the place of residence is prima facie the domicile."). It is presumed that a natural person's residence is also her domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *State Farm,* 19 F.3d at 519; *Lew*, 797 F.2d at 751.

23. Plaintiff alleges that all the acts committed against him giving rise to his Complaint took place in the County of San Diego, State of California. (Compl. at ¶ 3.)

24. Moreover, upon review of Plaintiff's personnel file, Plaintiff has represented himself as having been a resident of Riverside County since at least 2019—the date of his hire by Defendant. (*See* Declaration of Claudia Alarcon ("Alarcon Decl."), at ¶¶ 1-3.)

25. Upon information and belief, Plaintiff is a citizen of the State of California. "[A]t the pleading stage, allegations of jurisdictional fact need not be proven unless challenged." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227-28

(9th Cir. 2019) (quoting *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016)) (brackets in original).

### (b) Defendant is a Citizen of the States of Delaware and Texas

26. If a party is a corporation, it is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

27. Defendant is now and was at the time this action was filed a citizen of the States of Delaware and Texas within the meaning of 28 U.S.C. § 1332. Defendant is incorporated in Delaware and has its principal place of business in Texas. (*See* Declaration of Allison Nelson, at ¶¶ 1-3.)

28. "Doe" defendants fictitiously named, but not served, are not joined in this Petition and Notice, and shall be disregarded for the purpose of determining removal jurisdiction. 28 U.S.C. § 1441(b)(1). In determining whether diversity of citizenship exists, only the named defendants are considered. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) ("28 U.S.C. § 1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal. As such, the district court was correct in only considering the domicile of the named defendants.")

29. Plaintiff is a citizen of the State of California, and was not a citizen of Delaware or Texas when he filed the state court action and when this Petition and Notice was filed. Thus, complete diversity exists between Plaintiff and Defendant.

### 2. The Amount in Controversy Exceeds the $75,000 Jurisdictional Minimum

30. The jurisdictional minimum amount that must be in controversy, $75,000, was satisfied at the time of the filing of this action and is still satisfied by the facts set forth herein and described more specifically below. 28 U.S.C. § 1332(a) ("[D]istrict courts … have original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between … citizens of different States."); *see also Matheson v. Progressive Specialty Ins., Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). The amount in controversy is determined from the allegations or prayer of the complaint. *See St. Paul Mercury Indem. Co. v. Red Cab Co*. 303 US 283, 289 (1938) (inability to recover an amount adequate to give court jurisdiction does not show bad faith or oust court of jurisdiction).

31. Defendant discusses the allegations below solely to demonstrate that the amount in controversy in this matter exceeds $75,000. Defendant denies that Plaintiff is entitled to any damages, and Defendant denies that Plaintiff can recover on any of his theories of recovery. The below estimates of the amount placed in controversy by Plaintiff do not constitute an admission by Defendant as to Plaintiff's actual damages, if any. Defendant reserves all affirmative defenses and arguments as it relates to Plaintiff's alleged damages.

32. The Ninth Circuit employs the following framework for determining the amount in controversy on removal. First, a "court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If not, the court may consider facts in the removal petition and require parties to submit "summary-judgment-type evidence" relevant to the amount in controversy. *Id.*; *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Corbelle v. Sanyo Elec. Trading Co.*, No. CV03-01509, 2003 WL 22682464, at *3 (N.D. Cal. Nov. 4, 2003). "[T]he defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted).

33. Plaintiff's Complaint alleges and seeks to recover: (1) "loss of wages, salary, benefits and certain other incidental and consequential economic damages and loss;" (2) general damages for mental distress; (3) punitive damages, (4) attorney fees; and (5) "liquidated damages pursuant to 29 U.S.C. Section 2617(a)(1)(A)(iii)." (Compl. at ¶¶s 15-18, 22-24, 28-30, 35-37, 45-47, 53-55, 63-65, 71-73, 76-78, 83-86; Prayer at ¶¶ 1, 3-5, 7-8.)

34. In measuring the amount in controversy for purposes of diversity jurisdiction, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quotations omitted). In addition, the Court should aggregate damages in determining whether the controversy exceeds $75,000. *See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) ("aggregation is permitted when a single plaintiff seeks to aggregate two or more of his own claims against a single defendant") (internal quotations omitted).

35. Additionally, as the Ninth Circuit has clarified, "the amount in controversy is not limited to damages incurred prior to removal-for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)[; but] rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez*, 888 F.3d at 414-415.

36. Courts within the Southern District of California have repeatedly interpreted the Ninth Circuit's holding in *Chavez* to mean that all lost wages from the time of the individual's termination *up through the date of trial* must be considered part of the amount in controversy. *See Wickstrum v. FCA USA LLC*, No. 3:20-CV-00336-L-JLB, 2021 WL 532257, at *2 (S.D. Cal. Feb. 12, 2021) ("[P]otential offset does not alter the amount Plaintiff might obtain if he is

successful at trial (*i.e.*, what is at stake)."); *Bui v. Mercedes-Benz USA, LLC*, No. 20-CV-1530-CAB-WVG, 2020 WL 12688081, at *2 (S.D. Cal. Sept. 30, 2020) (inquiry looks at what plaintiff could recover if victorious on the merits); *Mutchler on behalf of California v. Circle K Stores, Inc.*, No. 20CV1239-GPC(BGS), 2020 WL 5511985, at *2 (S.D. Cal. Sept. 14, 2020) ("The amount in controversy is simply an estimate of the total amount in dispute … and reflects the maximum recovery the plaintiff could reasonably recover.").

### (a) Alleged Economic/Compensatory Damages And Penalties

37. In his Complaint Plaintiff alleges that he was discriminated, retaliated against, and wrongfully terminated because of an alleged disability suffered while working for ABM and his age. Plaintiff also alleges that he is entitled to lost wages, future earnings, and other employment related benefits caused by his wrongful discharge, mental distress damages, and punitive damages. (Compl. at ¶¶ 15-17, 22-24, 28-30, 35-37, 45-47, 53-55, 63-65, 71-73, 76-78, 83-85.)

38. For purposes of determining the amount in controversy, "[i]f a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them." *Chavez*, 888 F.3d at 417. Accordingly, "[w]here, as here, a plaintiff's complaint at the time of removal claims wrongful termination resulting in lost future wages, those future wages are included in the amount in controversy." *Id.* at 418.

39. Plaintiff started working for Defendant on or about March 11, 2019. (Alarcon Decl. ¶ 4.) Plaintiff alleges that he was wrongfully terminated on or about June 17, 2021. (Compl. at ¶ 7.) Plaintiff was a full time, non-exempt employee making $36.63/hr. (Alarcon Decl. ¶¶ 4-5.)

40. Assuming the foregoing to be true, a full time non-exempt HVAC Tech II Engineer (not counting overtime), would work approximately 2000 hours per year (*i.e.*, 40 hours a week x 50 weeks), or approximately 167 hours a month (2000 hours/12 months). (Alarcon Decl. ¶ 4.) From June 17, 2021 through December 17, 2022, or the date the complaint was filed, is approximately 5 months, or 835 hours for a full time employee. During that time period, Plaintiff reasonably could have made **$30,586.05** (835 hours x $36.63/hr.) in lost wages and earnings based on working full time.

41. And, at the time this case is removed, it is statistically likely to be resolved at trial in May 2024 (or approximately 28 months from the date of removal),[1] Plaintiff could reasonably incur an **additional $171,867.93 in lost future wages** (167 hours x 28 months x $36.63/hr.), based on the allegations in Plaintiff's complaint. This estimate does not include any overtime scheduled or annual hourly pay raises Plaintiff may have been eligible to receive each year in 2021 through 2024. (*See* Alarcon Decl. at ¶ 5.)

42. Accordingly, based on the allegations in Plaintiff's Complaint, the lost past and future wages claimed by Plaintiff "at issue" in this case, up to the date of trial, total **$201,867.93** ($30,586.05 + $171,281.88). Of course, Defendant strongly contends that Plaintiff is not entitled to such damages from Defendant – these calculations are purely for purposes of establishing the amount in controversy for removal.

43. The calculation of the amount in controversy goes even higher when adding the statutory liquidated damages being asserted pursuant to 29 U.S.C. section

---

[1] Statistics maintained by the Administrative Office of the United States Courts pursuant to 28 U.S.C. § 604(a)(2) indicate that in the Southern District of California, as of June 30, 2021, the median time from filing a civil action in federal court to final disposition of the action through trial is 28.3 months. (*See* Dillion Decl. at ¶ 5, Exh. D.) Defendant ABM requests that the Court take judicial notice of these facts pursuant to Federal Rule of Evidence, Rule 201.

2617(a)(1)(A)(iii). (Prayer for Relief at ¶ 7.) Liquidated damages are also included in calculating the amount in controversy. *Vallejo v. Sterigenics U.S., LLC*, No. 320CV01788AJBAHG, 2021 WL 2685348, at *4 (S.D. Cal. June 29, 2021) (factoring liquidated damages into the amount in controversy analysis). Section 2617(a)(1)(A)(iii) provides for the recovery of liquidated damages equal to the "wages, salary, employment benefits, or other compensation denied or lost" due to the violation of Plaintiff's rights under the FMLA; which effectively doubles the amount at issue. Based on the calculations above, Plaintiff would be intitled to, if he prevails, an additional **$201,867.93** in liquidated damages. Should Plaintiff prevail on his discrimination and retaliation claims, he will undoubtably seek this additional amount in liquidated damages. (Again, Defendant denies liability for any such damages).

44. Accordingly, the lost wages and liquidated damages placed at issue by Plaintiff in this matter total at least **$403,735.86** ($201,867.93 + $201,867.93). This more than satisfies the amount in controversy requirement.

### (b) Alleged Emotional Distress Damages Component

45. The emotional distress component of Plaintiff's alleged damages also must be considered in determining whether the amount in controversy requirement has been established. *Kroske*, 432 F.3d at 980. "Emotional distress damages may be considered when calculating the amount in controversy even where not clearly pled in the complaint." *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) ("[T]he vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial").

46. Plaintiff provides only conclusory allegations that he has suffered mental distress and claims general damages in an amount to be proven at trial. (*See* Compl. at ¶¶ 16, 23, 29, 36, 46, 54, 64, 72, 77, 84.) To establish the amount in

controversy, particularly with respect to emotional distress damages, a defendant also may rely on jury verdicts in cases involving similar facts. *Kroske*, 432 F.3d at 980.

47. Emotional distress damages, if proven, can be significant in employment cases involving alleged disability discrimination or retaliatory termination. *See, e.g.*, *Hurd v. Am. Income Life Ins.*, 2013 WL 5575073, at *7 (C.D. Cal. Oct. 10, 2013) ("Punitive damages and emotional distress damages in disability discrimination cases can be 'substantial' even when lost wages fall short of the jurisdictional minimum"); *Campbell v. Nat'l Passenger R.R. Corp.*, 2009 WL 692094 (N.D. Cal., Mar. 3, 2009) (awarding $120,000 in non-economic damages). Indeed, the Northern District of California concluded that the $75,000 amount in controversy requirement was satisfied in *Rodriguez v. Home Depot USA, Inc.* due to emotional distress damages alone, reasoning as follows:

> Defendant Home Depot has similarly satisfied its burden regarding emotional distress damages in this case. The cases it cites, while not perfectly analogous, show that emotional distress damages in cases involving retaliatory termination may be substantial. For example, in *Kolas v. Access Business Group*, 2008 WL 496470 (Cal. Superior Jan. 14, 2008), a jury awarded $200,000 in emotional distress damages based on a claim that the plaintiff was fired based on his age and disability and in retaliation for filing a workers' compensation claim for a herniated disc he sustained on the job. In *Liemandt v. Mega RV Corp.*, a jury awarded $385,000 in pain and suffering damages to a plaintiff who alleged that he was wrongfully terminated due to his age when he returned to work following a massive heart attack. 2011 WL 2912831 (Cal. Superior Ct. Feb. 4, 2011). … [Accordingly], the Court finds based on the awards in the retaliatory termination cases discussed above that Home Depot has demonstrated that if Rodriguez prevails in this action, her emotional distress damages more likely than not will exceed $75,000.

2016 WL 3902838, *5 (N.D. Cal. July 19, 2016).

48. Indeed, courts have readily found that emotional distress damages in single plaintiff employment case, alone, routinely exceed $75,000. *Stainbrook v. Target Corp.*, No. 2:16-CV-00090-ODW, 2016 WL 3248665, at *4 (C.D. Cal. June 8, 2016) (citing cases therein). Specific jury verdicts in employment cases in California indicate that awards well in excess of the jurisdictional requisite have

been awarded to plaintiffs (including short-term employees with minimal or no economic damages) in cases with facts similar to this case. *See, e.g.*:

      a.    *Burton v. Pulmocare Respiratory Servs.*, CIVDS1509192, 2016 WL 6833211 (Cal. Super. Ct.) (San Bernardino County Superior Court Case No. CIVDS1509192; verdict date of October 26, 2016): $396,735. The plaintiff informed her employer she was pregnant. The employer attempted to convert the plaintiff to part-time, and when she protested, the employer terminated her. The plaintiff's complaint included causes of action for pregnancy discrimination, retaliation, failure to prevent discrimination based on pregnancy, and wrongful termination. The jury granted the plaintiff $275,000 for pain and suffering.

      b.    *O'Brien v. Dennis E. Baca d/b/a Baca Properties*, RG-13-681132; 2015 WL 8545647 (Cal. Super.) (Alameda County Superior Court Case No. RG-13-681132; verdict date of June 19, 2015): $1,325,000. Plaintiff was a relief manager for an airport self-storage facility who alleged that when she became pregnant, her supervisor began to discriminate against her, harass her, retaliate against her, and was ultimately terminated. The jury found for the plaintiff, and awarded a seven-figure verdict with $300,000 in pain and suffering damages.

      c.    *Hernandez v. Pac. Bell Tel. Co.*, No. 37-2014-00014271, 2016 WL 1715445 (Cal. Super.) (San Diego County Superior Court Case No. 37-2014-00014271; verdict date of April 15, 2016): $2,102,884. Plaintiff was a sales and service representative who alleged that when she returned from a disability-related leave of absence, the defendant harassed, discriminated against her, harassed her, retaliated against her, and ultimately terminated her. The jury found for the plaintiff and awarded a seven figure verdict with $1,500,000 in pain and suffering damages.

49.    Thus, if Plaintiff is able to prove his discrimination, retaliation, and wrongful termination claims at trial, it is reasonable to conclude that Plaintiff will seek, and a jury could award, at least in excess $75,000, for emotional distress

damages alone.  (Of course, Defendant denies that Plaintiff is entitled to any such amounts or has suffered any emotional and mental distress.)

### (c) Alleged Punitive Damages Component

50. Plaintiff also seeks punitive damages.  (Compl. at ¶¶ 17, 24, 30, 37, 47, 55, 65, 73, 78, 85; Prayer at ¶ 4.)  Again, an award of punitive damages could easily exceed the $75,000 threshold by itself.  *Meija v. Parker Hannifin Corp*, CV 17-8477-MWF (RAOx), 2018 WL 582325, at *4 (C.D. Cal. Jan. 26, 2018).

51. Other cases have noted that punitive damages awards in Southern California often exceed the jurisdictional amount.  *See Sawyer v. Retail Data, LLC*, No. CV 15-184-JVS (RNBx), 2015 WL 3929695, at *2 (C.D. Cal. Apr. 29, 2015) (holding amount in controversy requirement met partly because defendant "cite[d] to similar recent Orange County and Los Angeles County employment discrimination cases where plaintiffs were awarded from $50,000 to $7.5 million in punitive damages"); *Stainbrook v. Target Corp.*, 2016 WL 3248665, at *4 (accepting defendant's argument that punitive and emotional distress damages alone could exceed $75,000 because punitive damages are often calculated as a multiplier of compensatory damages); *Mitri v. Walgreen Co., Inc.*, No. 10CV00538(AMI), 2011 WL 7447636 (E.D. Cal. Nov. 15, 2011) (jury awarding $1.15 million in punitive damages in whistleblower suit similar to this one); *see also Ko v. The Square Grp.*, 2014 WL 8108413 (Los Angeles Superior Ct., June 16, 2014) (a Los Angeles jury awarded the plaintiff $500,000 in punitive damages based on a wrongful termination claim); *Daoud v. Smith's Food & Drug Ctrs., Inc.*, No. BC124485, 1996 WL 526059 (Los Angeles Superior Ct., June 18, 1996) (awarding $75,000 for punitive damages in wrongful termination suit).

### (d) Alleged Attorneys' Fees Component

52. Where an underlying statute authorizes an award of attorneys' fees, such potential fees also may be included in calculating the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  Here,

Plaintiff seeks "attorneys' fees" and "costs of suit incurred." (*See* Compl. at ¶¶ 18, 86; Prayer for Relief at ¶¶ 8-9.)

53. As the Ninth Circuit explained in *Chavez*, when determining the amount in controversy, attorneys' fees are calculated based on the *total* possible recovery, and not just fees incurred as of the time of removal. *Chavez*, 888 F.3d at 417 ("That the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy."); *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("We conclude, in light of *Chavez*, and our precedents, that a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."); *Lucas v. Michael Kors (USA), Inc.*, No.CV 18–1608–MWF (MRWx), 2018 WL 2146403, at *11 (C.D. Cal. May 9, 2018) ("The broad holding [in *Chavez*] strongly suggests that the Ninth Circuit would find it appropriate to consider post-removal attorneys' fees. Therefore, the Court agrees that unaccrued post-removal attorneys' fees can be factored into the amount in controversy."); *Bernstein v. BMW of N. Am., LLC*, Case No. 18-cv-01801-JSC, 2018 WL 2210683, at *2 (N.D. Cal. May 15, 2018) ("The Ninth Circuit's recent decision in *Chavez* . . . holding that the amount in controversy is what is at stake in the litigation at the time of removal suggests that the attorneys' fees in the context of the amount in controversy requirement should be calculated based on the total possible recovery and not just the fees incurred to date—resolving a previously unresolved question.").

54. Here, assuming that just an average amount of pre-trial discovery, trial preparation, and trial attendance occurs in this case, a potential attorneys' fees award will likely exceed the $75,000 jurisdictional threshold regardless of any other claimed damages. Multiple courts have recognized that single-plaintiff suits such as this one easily generate over $100,000 in attorneys' fees. *See, e.g., Ponce v. Med. Eyeglass Ctr., Inc.,* No. 2:15-cv-04035-CAS (JEMx), 2015 WL 4554336, at *3

(C.D. Cal. July 27, 2015) (collecting cases); *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) (same).

55.     At a minimum, this case is likely to accrue at least $30,000 in attorneys' fees.  Multiple courts have recognized that in single-plaintiff cases similar to this one, attorneys are likely to accrue at least $30,000 in attorneys' fees (100 hours of attorneys' time multiplied by a $300 hourly rate).  *See, e.g.*, *Dias v. Burberry Ltd.*, No. 21-CV-192-MMA (JLB), 2021 WL 2349730, at *10 (S.D. Cal. June 9, 2021) (finding defendant's conservative estimate of 100 hours at $300/hr reasonable); *Avila v. Kiewit Corp.*, No. CV 19-5740-MWF-JPR, 2019 WL 4729641, at *6 (C.D. Cal. Sept. 26, 2019) (In an order denying a motion to remand, explaining "[a] number of courts have held that 100 hours and an hourly rate of $300 is an appropriate and conservative estimate for employment cases."); *Stainbrook v. Target Corp.*, 2016 WL 3248665, at *5 (applying same rate and hours).

56.     Accordingly, the Complaint contemplates an amount "at stake" in this litigation which far exceeds the $75,000 jurisdictional threshold.

## IV.     REMOVAL IS TIMELY

57.     This Petition and Notice of Removal is timely pursuant to 28 U.S.C. section 1446(b) because this action is being removed within thirty (30) days of the date when Defendant, through its registered agent, was served with the Summons and Complaint.  28 U.S.C. § 1446(b)(1); *Lerma*, 2011 WL 2493764, at *2.  (*See* Dillion Decl. at ¶ 3, Exh. B.)

## V.     CONCLUSION

58.     For the reasons stated above, this Court has jurisdiction under (a) 28 U.S.C. section 1331 because Plaintiff's Complaint alleges violations of federal law and (b) 28 U.S.C. section 1332 because this is a civil action between citizens of different states, and the matter in controversy more than likely exceeds $75,000, exclusive of interest and costs.  Accordingly, Defendant may remove this action to

this Court pursuant to 28 U.S.C. sections 1331, 1332 and 1441.  Defendant respectfully requests that this Court exercise its removal jurisdiction over this action.

DATED: January 21, 2022

PAYNE & FEARS LLP
Attorneys at Law


By: _____/s/ Blake A. Dillion_____
LAURA FLEMING
ROBERT T. MATSUISHI
BLAKE A. DILLION

Attorneys for Defendant ABM INDUSTRY GROUPS, LLC

4863-5936-9481.2

# PROOF OF SERVICE

**Steve Mabe v. ABM Industry Group, et al.**
**United States District Court Case No. 2:22-cv-00475**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 4 Park Plaza, Suite 1100, Irvine, CA 92614.

On January 21, 2022, I served true copies of the following document(s) described as **PETITION AND NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1331, 1332 AND 1441** on the interested parties in this action as follows:

| | |
|---|---|
| Eugene S. Thompson, Esq.<br>9655 Granite Ridge Drive, Suite 200<br>San Diego, CA 92123<br>Telephone: (619) 528-2303<br>Facsimile: (858) 717-8001<br>Email: eugenet44@gmail.com | Attorneys for Plaintiff,<br>STEVE MABE |

**BY MAIL:** I caused a copy of the document(s) to be sent from the e-mail address, pdavid@paynefears.com, to the e-mail address(es) listed above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 21, 2022, at Irvine, California.

Patricia David